UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DOCTOR'S ASSOCIATES, LLC., | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:22-CV-00786 (JCH) |
| v. | : | |
| | : | |
| DAWN REINO and | : | |
| BRIAN REINO, | : | MARCH 28, 2023 |
| Defendants. | : | |

**RULING ON PETITION TO COMPEL ARBITRATION (DOC. NO. 1), MOTION TO DISMISS PETITION TO COMPEL ARBITRATION (DOC. NO. 22) AND MOTION TO EXPEDITE RULING ON MOTION TO COMPEL ARBITRATION (DOC. NO. 25)**

**I.      INTRODUCTION**

This case comes before the court pursuant to a Petition to Compel Arbitration ("Petition") filed by the plaintiff, Doctor's Associates, LLC ("DAL") in connection with counter filings, by the defendants Dawn Reino and Brian Reino ("the Reinos"), to a collection action initiated by DAL's affiliate, Subway Real Estate, LLC ("SRE"), in the Court of Common Pleas of Lehigh County, Pennsylvania (hereinafter, the "PA Action"). See generally Petition to Compel Arbitration ("Pl.'s Pet.") (Doc. No. 1); Memorandum of Law in Support of Petition ("Pl.'s Mem.") (Doc. No. 1-8).  In response, the Reinos filed a Motion to Dismiss the Petition, arguing that DAL failed to state a claim and this court lacks both subject matter and personal jurisdiction to rule on DAL's Petition.  See generally Motion to Dismiss Plaintiff's Petition to Compel Arbitration ("Defs.' Mot.") (Doc. No. 22); Memorandum of Law in Support of Motion to Dismiss ("Defs.' Mem.") (Doc. No. 22-1).  DAL opposes the Reinos' Motion.  See generally Plaintiff's Opposition to Motion

1

to Dismiss ("Pl.'s Opp."). DAL also filed a Motion to Expedite this court's ruling on its Motion to Compel Arbitration (Doc. No. 25), which is unopposed. See Motion to Expedite Ruling on Motion to Compel Arbitration ("Mot. to Expedite") (Doc. No. 25).

For the reasons stated below, DAL's Petition to Compel Arbitration (Doc. No. 1) is granted, the Reinos' Motion to Dismiss (Doc. No. 22) is denied, and DAL's Motion to Expedite this Ruling is denied as moot.

**II.    FACTUAL BACKGROUND**

The plaintiff, DAL, is the franchisor of Subway restaurants. Pl.'s Pet. ¶ 2. DAL is incorporated in Florida and has its principal place of business in Connecticut. Id. The defendants, the Reinos, are residents and citizens of Pennsylvania. Id. at ¶ 3. On or about November 20, 2019, the Reinos entered into a Franchise Agreement, No. 31316 ("Franchise Agreement"), with DAL to operate a Subway restaurant. Id. at ¶ 6. See generally, Franchise Agreement No. 31316 ("Franchise Agreement"), Pl.'s Ex. A (Doc. No. 1-1).

That same day, the Reinos signed an Assignment and Assumption of Sublease ("Sublease") for the space in which their Subway franchise was to be located. Pl.'s Pet. ¶ 6. The Reinos signed this Sublease with DAL's affiliate, SRE. Id. at ¶ 8. SRE had a Master Lease with Mall at Lehigh Valley, LP ("Landlord"), and subleased the premises to the Reinos pursuant to the Master Lease. Id. The Sublease also contained a "cross-default" clause, which provided that any breach of the Franchise Agreement by the Reinos would also constitute a breach of the Sublease. Id. at ¶ 13.

Paragraph 10 of the Franchise Agreement is an arbitration clause, which provides in relevant part:

> a. Any dispute, controversy or claim arising out of or relating to this Agreement or the breach thereof shall be settled by arbitration . . . .
>
> b. The parties agree that Bridgeport, Connecticut will be the cite for arbitration. . . .
>
> . . . .
>
> d. You may only seek damages or any remedy under law or equity for any arbitrable claim against us or our successors or assigns.  You agree our intended beneficiaries of the arbitration clause including our Affiliates, shareholders, directors, officers, employees, agents and representatives, and their affiliates, will be neither liable nor named as a party in any arbitration or litigation proceeding commenced by you where the claim arises out of or relates to this Agreement.  If you name a party in any arbitration or litigation proceeding in violation of this Subparagraph 10.d, you will reimburse us for reasonable costs incurred, including but not limited to, arbitration fees, court costs, lawyers' fees, management preparation time, witness fees, and travel expenses incurred by us or the party.
>
> . . . .
>
> f.  Any disputes concerning the enforceability or scope of the arbitration clause shall be resolved pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), and the parties agree that the FAA preempts any state law restrictions (including the site of the arbitration) on the enforcement of the arbitration clause in this Agreement.  The parties agree to waive any right to disclaim or contest this pre-dispute arbitration agreement.
>
> g.  A party will be in default of this agreement if it . . . commences litigation in any forum except where permitted by this Paragraph 10. . . .

Franchise Agreement ¶ 10 (emphasis added).

The Franchise Agreement also contains a paragraph governing DAL's and the Reinos' obligations under the Sublease.  It provides:

> c. If you breach the terms of your Sublease, the Sublessor, whether us or our designee, may exercise its rights under the Sublease, including to evict you from the franchised location.  Any action brought by the Sublessor to enforce the Sublease, including actions brought pursuant to the cross-default clause in Paragraph 6 of the Sublease (which provides that a breach of the Franchise Agreement is a breach of the Sublease), is not to be construed as an arbitrable dispute.

Id.

In short, although the Franchise Agreement bound the Reinos and DAL to arbitrate "[a]ny dispute, controversy or claim arising out of or relating to this Agreement or the breach thereof," Franchise Agreement ¶ 10.a, it allowed DAL and its Affiliates, including SRE, to bring an action to "exercise its rights under the Sublease" outside arbitration, id. at ¶ 10.c.  Claims against agents of Subway, including claims involving the Sublease, were required to be submitted to arbitration by the Reinos.

    A.    <u>SRE Initiates PA Action</u>

The above-described provisions of the Franchise Agreement became relevant in March 2020, when the Reinos "ceased operation of the Restaurant, and before the Sublease expired, closed their Subway restaurant and vacated the premises."  Pl.'s Pet. ¶ 14.  The Reinos "failed to pay the rent and additional rents due under the Sublease," which prompted the Landlord to send a "notice of default and abandonment of the premises" to SRE on or about November 30, 2020.  Id. at ¶ 15.  One year later, SRE and the Landlord resolved this nonpayment issue by entering into a stipulation of settlement, under which SRE paid the Landlord $40,000.  Id. at ¶ 16.  On March 8, 2022, SRE initiated a collection action in Pennsylvania state court (hereinafter, "Pennsylvania Action") against the Reinos.  Id. at ¶ 17.  There, SRE sought $40,000 and reasonable attorney's fees and expenses for the Reinos' failure to pay rent and breach of the Sublease.  Id.

    B.    <u>Letter by the Reinos' PA Counsel</u>

Before filing an Answer in the PA Action, the Reinos' Pennsylvania attorney, Kevin Fogerty ("Attorney Fogerty"), sent SRE a letter (hereinafter, the "April Letter") to

4

request, "before each side runs up substantial legal fees and costs, [ ] that Subway discontinue this [PA Action] against [his] clients[, the Reinos.]"  Letter from Attorney Fogerty to SRE ("PA Letter"), Def.'s Ex. G at 1 (Doc. No. 1-7).  In this Letter, dated April 19, 2022, Attorney Fogerty detailed several "serious misrepresentations made to [the Reinos] by . . . an agent of Subway."  Id.  He then proceeded to list the "corresponding damages and losses" stemming from the misrepresentations:

> From November 20, 2019 until March 15, 2020, [the Reinos] paid over $10,000.00 for the plumbing repairs and $1,500.00 for freezer and cooler repairs, $500.00 for the sandwich unit, $1,100.00 to try to fix the bread oven door hinge, $500.00 to update the emergency lighting, had a full day loss of sales on the Saturday before Christmas due to plumbing backup ($1,800.00), and purchase of new point of sale device with locking cash drawer ($3,600.00).

Id. at 2.  These detailed losses came to a total of $19,000, and Attorney Fogerty went on to state in his letter that, overall, his "clients lost over $100,000.00 in th[e] store[.]"  Id.  Attorney Fogerty concluded the Letter by emphasizing that the Reinos "are not requesting to be paid money as part of this settlement, even though [the Reinos'] damages are far greater" than those claimed in the PA lawsuit.  Id. (emphasis added.  Instead, he asked "merely to walk away so everyone can put this behind them."  Id.

5

C.      Reinos' Answer in PA Action[1]

SRE did not, however, "walk away," and exactly one month later, on May 19, 2022, the Reinos filed their Answer in the PA Action (hereinafter, "PA Answer"). Pl.'s Pet. ¶ 18. The PA Answer contained one affirmative defense (hereinafter "New Matter") and one counterclaim, which together alleged, inter alia, that the Reinos "were fraudulently induced to purchase the Restaurants (and by extension sign the Franchise Agreement) due to misrepresentations made to them" by DAL's agents. Id.; see also Defs. Brian and Dawn Reino's Answer, New Matter, and Counterclaim in Response to Pl.'s Compl. ("PA Answer"), Pl.'s Ex. F at pp. 6–10 (Doc. No. 1-6).

1.      Reinos' New Matter

The Pennsylvania Rules of Civil Procedure require that affirmative defenses be expressly pled in a party's Answer under the heading of "New Matter". See Pa. R. Civ. P. 1030; see also STANDARD PENNSYLVANIA PRACTICE § 29:4 (2d Ed. 2022) ("The distinction between a counterclaim and a defense [like a New Matter] is that a defense merely precludes or diminishes the amount of the plaintiff's recovery, while a counterclaim may entitle the defendant in the original action to some amount of

---

[1] DAL's Petition in the instant case appears to mischaracterize the Reinos' Answer as filed in the PA Action. Namely, DAL alleges that the Reinos (1) "filed an answer, affirmative defenses and two counterclaims in the [PA] Action[,]" Pl.'s Pet ¶ 18, and (2) "seek $40,000 in damages for breach of contract and an additional $50,000 in damages in connection with the alleged misrepresentations of DAL's business development agreements[,]" id. at ¶ 19. The Reinos' Answer contains a single counterclaim for damages "in excess of" $50,000, and contains a New Matter (affirmative defense) in which the Reinos request that judgment on the breach of contract claim, alleged by SRE in the PA Action, be entered in the Reinos' favor because the Reinos have suffered damages in excess of $40,000—the amount sought by SRE. See Defs. Brian and Dawn Reino's Answer, New Matter, and Counterclaim in Response to Pl.'s Compl. ("PA Answer"), Pl.'s Ex. F at pp. 6–10 (Doc. No. 1-6). Critically, the Reinos do not seek a recovery of $40,000 under the New Matter—nor could they, because the $40,000 in overdue rent was owed to the Landlord and was paid by SRE, not the Reinos.

affirmative relief."). In accordance with this Rule, the Reinos' PA Answer includes a New Matter, wherein the Reinos allege that SRE "and its agent, DBA," (1) misrepresented the "historical earnings information" of the franchise location at issue, PA Answer ¶ 31, and (2) concealed several "major problems" with the premises, id. at ¶¶ 32–33, with the purpose of "induc[ing the Reinos] to enter into the Sublease" which provides the basis for the PA Action, id. at ¶ 31. The allegedly concealed "major problems", the New Matter alleges, caused the Reinos to incur the same "costs and expenses" enumerated in the April Letter—for the same total of $19,000. Id. at ¶ 35. The New Matter further alleges that, as a result of the misrepresentations and concealments made by SRE and its agent, BDA, the Reinos "lost in excess of $100,000". Id. at ¶ 36.

The Reinos' New Matter avers that, as a result of the misrepresentations and concealments of SRE (through its agent, DBA), the Reinos "suffered and sustained damages and losses in excess of the $40,000 sum sought to be recovered by [SRE.]" PA Answer ¶ 37. In the New Matter, the Reinos requested "entry of judgment in their favor" on SRE's breach of contract claim, "with said claim to be dismissed," and an "award of costs of suit . . . ." Id.

    2.  Reinos' Counterclaim

The Reinos' PA Answer includes one separately alleged counterclaim, in which the Reinos allege that SRE is "liable and indebted to [the] Reinos for their damages and losses sustained and incurred by them as a result of the misrepresentations made with respect to the leased premises[.]" Id. at ¶ 41. In an allegation in the New Matter, the Reinos state that DAL and its agents concealed and made misrepresentations that led

7

to the Reinos losing "in excess of $100,000." Id. at ¶ 36.  Although the Reinos do not, under the Counterclaim heading of their Answer, repeat the list of specific costs they incurred laid out in the New Matter section, they do seek "compensatory damages in an amount in excess of" $50,000 "plus interest . . . plus costs of suit." [2] Id. at ¶ 42; see also Pl.'s Pet. ¶ 19.

Taking into consideration the New Matter and the Counterclaim, the Reinos' PA Answer alleges losses "in excess of $100,000", PA Answer ¶ 36, and seeks total damages "in excess of $50,000", id. at ¶ 42.

D.     DAL's Petition to Compel

On June 16, 2022, approximately one month after the Reinos filed their Answer in the PA Action, DAL moved this court to compel arbitration.  See Pl.'s Pet. at 1.  On June 23, SRE filed a motion in the PA Action and requested that the Pennsylvania court stay the Reinos' Counterclaim until this court ruled on their Petition.  Pl.'s Mot. to Expedite Ruling on Pet. to Compel Arbitration ("Mot. to Expedite") ¶ 5 (Doc. No. 25).  The Pennsylvania court denied SRE's Motion, though "DAL is in the process of moving to reconsider that ruling." Id. at ¶ 7.  Seeking to "protect DAL's arbitration rights . . . [and] avoid SRE (DAL's affiliate) having to incur costs in defending a claim that belongs

---

[2] Because claims under $50,000 are subject to judicial arbitration in Pennsylvania, see 42 Pa. C.S.A. § 7361, it is common for complaints and counterclaims to simply demand damages "in excess of $50,000" to avoid application of this rule, even if the actual amount sought is higher, see, e.g., PRACTICAL LAW LITIGATION, Complaint (PA) (advising litigants to "[s]tate whether or not the amount claim exceeds the particular court's jurisdictional amount required for arbitration . . . .  For example, a demand for relief in a complaint filed in the Court of Common Pleas of Philadelphia County might read ". . . Plaintiff demands judgment . . . in an amount in excess of $50,000"); Court of Common Pleas of Lehigh County Rule of Civil Procedure 1301 ("All civil actions which are subject to compulsory arbitration under the Judicial Code, in which the amount in controversy, exclusive of interest and costs, is Fifty Thousand ($50,000.00) Dollars or less, shall be submitted to compulsory arbitration.").

in arbitration," DAL moved this court on September 27, 2022, to expedite its ruling on DAL's Petition to Compel Arbitration. Id. at ¶ 8.

In DAL's Petition, it argues that the Reinos' New Matter and Counterclaim, in the PA Action, are "about actions that DAL allegedly took, through its [agent], that relate to [the Reinos'] operation of the Restaurant and their relationship with DAL as . . . franchisees . . . [and] have nothing to do with SRE's obligations under the Sublease." Pl.'s Pet. ¶ 21. DAL asserts that, in doing so, the Reinos have violated the Franchise Agreement and "should therefore be compelled to arbitrate [the New Matter and Counterclaim] and will be further responsible for paying DAL's expenses in connection with this Petition and the Pennsylvania [ ] Action as it relates to enforcing DAL's arbitration rights." Id. at ¶ 22. DAL also argues that the Reinos have violated Paragraph 10.d of the Franchise Agreement's prohibition on "asserting any arbitrable claims against any party other than DAL" through their "attempt[s] to assert claims against DAL's [agents]" in the Pennsylvania Action. Id. at ¶ 23.

Proceeding pro se, the Reinos have moved to dismiss DAL's Petition for (1) lack of subject matter jurisdiction; (2) lack of personal jurisdiction over the Reinos; and (3) failure to state a claim upon which relief can be granted. See generally Defs.' Mot.

### III.  LEGAL STANDARD

The Federal Arbitration Act (the "FAA") provides that "a written provision in a contract to settle by arbitration a controversy thereafter arising out of such contract shall be valid, irrevocable, and enforceable." Meyer v. Uber Techs., Inc., 868 F.3d 66, 73 (2d Cir. 2017) (quoting 9 U.S.C. § 2) (internal quotation marks and alterations omitted). "The FAA's primary purpose is to ensure that private agreements to arbitrate are

enforced according to their terms." In re Am. Exp. Fin. Advisors Sec. Litig., 672 F.3d 113, 127 (2d Cir. 2011) (quoting Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford, Jr. Univ., 489 U.S. 468, 479 (1989)) (internal alterations omitted). Section 4 of the FAA states:

> A party aggrieved by the alleged failure . . . of another to arbitrate under a written agreement for arbitration may petition any United States Court which, save for such agreement, would have jurisdiction under title 28, in a civil action . . . of the subject matter of a suit arising out of the controversy between the parties, for an order directing that arbitration proceed in the matter provided for in such agreement.

9 U.S.C. § 4; see also Vaden v. Discover Bank, 556 U.S. 49, 52 (2009) (internal citation omitted; internal alterations adopted) ("Section 4 . . . authorizes a United States district court to entertain a petition to compel arbitration if the court would have jurisdiction, 'save for the arbitration agreement,' over 'a suit arising out of the controversy between the parties.'").

While "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit," Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002) (internal quotation marks omitted), courts are required to "construe arbitration clauses as broadly as possible," Collins & Aikman Prods. Co. v. Bldg. Sys., Inc., 58 F.3d 16, 19 (2d Cir.1995) internal quotation marks omitted), and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (U.S. 1983). Thus, courts "will compel arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." In re Am. Exp. Fin. Advisors Sec. Litig., 672 F.3d at 128 (internal quotation marks omitted).

In deciding motions to compel arbitration, courts in this Circuit apply a "standard similar to that applicable for a motion for summary judgment." Nicosia v. Amazon.com, Inc., 834 F.3d 220, 229 (2d Cir. 2016). Thus, "the court considers all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, and draws all reasonable inferences in favor of the non-moving party." Meyer, 868 F.3d at 74 (internal quotation marks, citations, and alterations omitted). "If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003). However, "where the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, [the court] may rule on the basis of that legal issue and avoid the need for further court proceedings." Nicosia, 834 F.3d at 229 (internal quotation marks omitted).

**IV.    DISCUSSION**

    A.    Subject Matter Jurisdiction

In its Petition, DAL asserts that this court has diversity jurisdiction. Pl.'s Pet. ¶ 4. Pursuant to title 28, section 1332 of the United State Code, federal district courts may decide cases if the parties are "citizens of different States" and the amount in controversy "exceeds the sum or value of $75,000, exclusive of interests and costs." 28 U.S.C. § 1332.

The parties do not contest that they are diverse: DAL is a Florida corporation with its principal place of business in Connecticut while the Reinos are citizens of Pennsylvania. Pl.'s Pet. ¶¶ 2–3. Rather, the Reinos argue that this court lacks diversity

jurisdiction because "the amount in controversy in the [PA Action,] as pleaded by [SRE]'s complaint[,] is $40,000, which is insufficient to support federal jurisdiction. . . ." Defs.' Mem. at 7.  DAL refutes this, arguing that the Reinos "put $100,000 at issue in the [PA Action]" when the Reinos' Pennsylvania attorney sent SRE's attorney a letter claiming that the Reinos "lost over $100,000.00 in this store."  Pl.'s Opp. at 2.  DAL argues that the amount in controversy requirement for diversity jurisdiction is "determined as of the date that suit is filed" and thus, because the Reinos allegedly put more than $75,000 "at issue" when DAL's Petition was filed, the amount in controversy requirement is met.  Id. at 2 (citing Wolde-Meskel v. Vocational Instruction Project Cmt. Serv., Inc., 166 F.3d 59, 62 (2d Cir. 1999)); see also Chase Manhattan Bank, N.A. v. Am. Nat. Bank & Tr. Co. of Chicago, 93 F.3d 1064, 1070 (2d Cir. 1996).

The court does not agree with the Reinos' argument that the amount in controversy is the $40,000 at issue in SRE's lawsuit against them in state court.  That "controversy" is not the subject of the Petition to Compel Arbitration nor what would be the matter in controversy in the arbitration.  Indeed, that dispute is excepted from the arbitration agreement between the parties.  Franchise Agreement ¶ 10.c.

In Vaden v. Discover Bank, the Supreme Court considered whether this section required a court to "look through" a petition to compel arbitration to the underlying suit in order to determine whether a district court had jurisdiction to grant a motion to compel arbitration of a controversy which allegedly triggered federal question jurisdiction. Vaden, 556 U.S. at 52.  At issue in Vaden was whether there was federal question jurisdiction over the "controversy."  The Court held that the "look through" approach was prescribed by section 4 of the FAA.  Id. at 53.  However, much of the discussion in

12

Vaden about what the controversy necessarily was—in the context of federal question jurisdiction—focused on the controversy in that case's "well-pleaded complaint" rule at issue in federal question jurisdiction. Id. at 70.[3]

Unlike the case under consideration, the Vaden case did not address diversity jurisdiction. The Reinos nonetheless ask that this court apply Vaden's look through approach. Defs.' Mem. at 7. The Reinos argue that this court "must first determine whether it would have subject-matter jurisdiction over the [PA Action]" and that the amount in controversy in the PA Action is limited to the $40,000 sought by SRE. Id. However, applying Vaden's look through approach, this court has subject matter jurisdiction.

Vaden's look-through approach instructs a district court to look at the "entire, actual 'controversy between the parties,' as they have framed it". Vaden, 556 U.S. at 66 (emphasis added). Here, the arbitrable "controversy between the parties"—DAL and the Reinos—is contained in the Reinos' counterclaim, which alleges losses in excess of $100,000. See, supra Section II.C. Further, the Reinos' counsel, prior to any litigation commencing against SRE or DAL or the filing of the Petition to Compel, asserted losses caused by DAL's affiliates, SRE and its agent, of over $100,000, in an effort to settle the

---

[3] Though, as here, also considering a counterclaim, the Vaden Court's analysis was constrained by the fact that the defendant claimed federal question jurisdiction, which is subject to the well-pleaded complaint rule. See Vaden, 556 U.S. at 60 ("a federal counterclaim, even when compulsory, does not establish 'arising under' jurisdiction. . . . [I]t would undermine the clarity and simplicity of [the well-pleaded complaint] rule if federal courts were obliged to consider the contents not only of the complaint but also of responsive pleadings in determining whether a case 'arises under' federal law."); see also CMH Homes, Inc. v. Goodner, 729 F.3d 832 (8th Cir. 2013) (emphasis added) ("Because the substantive controversy in Vaden, in light of the well-pleaded complaint rule, did not present a federal question, the district court there lacked jurisdiction.). Federal diversity jurisdiction has no such rule preventing this court from considering the Reinos' counterclaim in the instant case.

13

real estate-related litigation. See April Letter at 2. The court has no difficulty finding that the jurisdictional minimum for diversity jurisdiction is met under Vaden's approach. It certainly cannot be said that it appears "to a legal certainty that the claim is really less than the jurisdictional amount." A.F.A. Tours, Inc. v. Whitchurch, 937 F.2d 82, 87 (2d Cir. 1991) (internal citation omitted).

Of course, Vaden was decided specifically in the context of federal question jurisdiction. A review of pre-Vaden Second Circuit diversity jurisdiction precedent leads to the same conclusion. Diversity jurisdiction in the context of arbitrations was addressed in this Circuit before Vaden was decided: in Doctor's Associates, Inc. v. Hamilton, the Second Circuit considered a petition to compel arbitration claiming diversity jurisdiction where the arbitration clause capped damages at less than $75,000. 150 F.3d 157, 160 (2d Cir. 1998). In determining that the amount-in-controversy requirement was nonetheless met, the Court instructed district courts to "look through to the possible award resulting from the desired arbitration". Id. (quoting Davenport v. Proctor & Gamble Mfg. Co., 241 F.2d 511, 514 (2d. Cir. 1957)) (internal citations omitted). Here, the possible award resulting from arbitration between DAL and the Reinos exceeds the jurisdictional minimum: by the Reinos' own claim, their losses exceeded $100,000. See April Letter at 2; PA Answer ¶ 36.

Finally, while it does not appear that the Second Circuit has addressed the diversity jurisdiction issue of amount in controversy in the arbitration context since Vaden, two other Circuits have cited Vaden in connection with their discussion in the context of petitions to compel arbitration. See Amer. Gen. Fn. Serv. Of Al., Inc. v.

real estate-related litigation. See April Letter at 2. The court has no difficulty finding that the jurisdictional minimum for diversity jurisdiction is met under Vaden's approach. It certainly cannot be said that it appears "to a legal certainty that the claim is really less than the jurisdictional amount." A.F.A. Tours, Inc. v. Whitchurch, 937 F.2d 82, 87 (2d Cir. 1991) (internal citation omitted).

Of course, Vaden was decided specifically in the context of federal question jurisdiction. A review of pre-Vaden Second Circuit diversity jurisdiction precedent leads to the same conclusion. Diversity jurisdiction in the context of arbitrations was addressed in this Circuit before Vaden was decided: in Doctor's Associates, Inc. v. Hamilton, the Second Circuit considered a petition to compel arbitration claiming diversity jurisdiction where the arbitration clause capped damages at less than $75,000. 150 F.3d 157, 160 (2d Cir. 1998). In determining that the amount-in-controversy requirement was nonetheless met, the Court instructed district courts to "look through to the possible award resulting from the desired arbitration". Id. (quoting Davenport v. Proctor & Gamble Mfg. Co., 241 F.2d 511, 514 (2d. Cir. 1957)) (internal citations omitted). Here, the possible award resulting from arbitration between DAL and the Reinos exceeds the jurisdictional minimum: by the Reinos' own claim, their losses exceeded $100,000. See April Letter at 2; PA Answer ¶ 36.

Finally, while it does not appear that the Second Circuit has addressed the diversity jurisdiction issue of amount in controversy in the arbitration context since Vaden, two other Circuits have cited Vaden in connection with their discussion in the context of petitions to compel arbitration. See Amer. Gen. Fn. Serv. Of Al., Inc. v.

Witherspoon, 426 Fed. Appx. 781, 782–83 (11th Cir. 2011) (per curiam); CMH Homes, Inc., 729 F.3d at 838.  As here, the Witherspoon appellant-defendant first asserted the claim that the plaintiff-appellees sought to be arbitrated in her "'Answer, Counterclaim and Third Party Complaint.'"  Witherspoon, 781 Fed. Appx. at 782.  The Witherspoon Court concluded that the "entire, actual controversy" for purposes of section 4 was "contained within Witherspoon's [Third Party C]omplaint asserting claims against [the plaintiff-appellees]."  Id. at 782.  Like this court does here, the Court then determined that the amount in controversy requirement for diversity jurisdiction was met by the amount alleged in the defendant-appellant's responsive pleading.  Id. at 783.

For the foregoing reasons, the court has subject matter jurisdiction over DAL's Motion to Compel.

B.    Personal Jurisdiction

Next, the Reinos contend that this court lacks personal jurisdiction over both of them.  Defs.' Mem. at 8.  DAL counters that this "argument[ is] immaterial because [the Reinos]  explicitly consented to personal jurisdiction of this Court for the purpose of enforcing the arbitration clause in their [F]ranchise [A]greement with DAL."  Pet.'s Mem. at 5.  The court agrees with DAL.

There is a "long-standing principle that a party who agrees to arbitrate in a state (such as Connecticut) in which the FAA makes arbitration agreements enforceable also consents to jurisdiction in whatever court could compel arbitration in that state." Doctor's Assocs., Inc. v. Distajo, 107 F.3d 126, 136 (2d Cir. 1997) (hereinafter Distajo II") (citing Doctor's Assocs., Inc. v. Stuart, 85 f.3d 975, 979 (2d Cir. 1996)).  The Reinos agreed to arbitrate in Bridgeport, Connecticut.  Franchise Agreement ¶ 10(b).

Moreover, in paragraph 18 of the Franchise agreement, it states—in all capital letters, only two paragraphs above the Reinos' signature—that, "even if a court of competent jurisdiction decides that the arbitration provision in paragraph 10 is unenforceable[,]" the Reinos agreed to waive a jury trial and that "any such trial shall take place in a court of competent jurisdiction in Connecticut." Id. at ¶ 18 (emphasis added).

The court therefore holds that it has personal jurisdiction over the Reinos, pursuant to the Franchise Agreement.

C.     Failure to State a Claim

In their final argument, the Reinos aver that DAL has failed to state a claim upon which relief can be granted. Defs.' Mem. at 15. Specifically, the Reinos emphasize that their counterclaim is alleged against SRE, not DAL, and that "DAL simply has no legal basis upon which it can force the Reinos to arbitrate claims which the Reinos have pleaded solely against [SRE]." Id. This argument is unavailing.

The arbitration clause does not specify that the Reinos need only arbitrate claims that are against a party to the arbitration agreement. See Franchise Agreement ¶ 10. To the contrary, the clause contains a broad reference to "[a]ny dispute, controversy or claim arising out of or relating to this [Franchise] Agreement or the breach thereof," which, on its face, could encompass claims against nonparties to the agreement. Id. at ¶ 10(a). Furthermore, the Franchise Agreement expressly provides that the Reinos specifically "agree" that DAL's intended beneficiaries of the arbitration clause include their "[a]ffiliates", such as SRE. Id. at ¶ 10(d).

Additionally, courts in this Circuit have repeatedly held that a "court will not permit plaintiffs to avoid arbitration simply by naming individual agents of the party to the

16

arbitration clause and suing them in their individual capacity." Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Konvalinka, No. 10 CIV. 9355 (AKH), 2011 WL 13070859, at *3 (S.D.N.Y. Mar. 17, 2011); Doctor's Assocs., Inc. v. Hollingsworth, 949 F.Supp. 77, 83 (D. Conn. 1996); Mosca v. Doctors Assocs., Inc., 852 F.Supp. 152, 155 (E.D.N.Y. 1993). "To do so would be to subvert the federal policy favoring arbitration and the specific arbitration clause in the instant case." Hollingsworth, 949 F.Supp. at 83; Mosca, 852 F.Supp. at 155.

Because the Reinos specifically agreed that affiliates, like SRE, were intended beneficiaries to the arbitration agreement, they cannot now argue that the agreement is not enforceable as to a suit against SRE. The court therefore holds that DAL has stated a claim upon which relief can be granted.

## V. CONCLUSION

For the foregoing reasons, DAL's Petition to Compel Arbitration (Doc. No. 1) is granted and the Reinos' Motion to Dismiss (Doc. No. 22) is denied. DAL's Motion to Expedite Ruling on Motion to Compel is denied as moot. The Reinos are ordered to submit to arbitration the claims they raised or could have raised against DAL so that the arbitrator may decide whether such claims are arbitrable. The Clerk is ordered to close the case.

SO ORDERED.

    Dated this 28th day of March 2023 at New Haven, Connecticut.

                                          /s/ Janet C. Hall
                                     Janet C. Hall
                                     United States District Judge